UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SAUL MARCELO CUZCO

              Plaintiff,

  -against-                     06 Civ. 2789 (KMW) (THK)

                               OPINION AND ORDER

ORION BUILDERS, INC. et al.,

              Defendants.
------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

    Plaintiff Saul Marcelo Cuzco ("Plaintiff") brings this putative class action against Defendant Jan Kvas, individually and d/b/a Orion Carpentry, and Defendant Orion Builders, Inc. (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Laws (the "NYLL"), § 190 et seq.

    Specifically, Plaintiff alleges that Defendants failed to pay him, and other workers similarly situated, (1) overtime wages; (2) a minimum wage for certain workweeks; and (3) wages in a timely fashion, in violation of the FLSA and NYLL.  Plaintiff also alleges that Defendants failed to pay so-called "spread of hours" wages (an extra hour of pay for workdays exceeding ten hours) as required by NYLL.

Previously,[1] the Court granted Plaintiff's motion to pre-certify this action as a collective action under the FLSA, and for leave to amend the complaint to include, inter alia, class claims for the NYLL violations pursuant to Fed. R. Civ. P. 23(b)(3).[2]  Two additional workers, Claudio Figueroa and Bolivar Guiracocha, consented to join the FLSA collective action ("Opt-in Plaintiffs"; collectively, "Plaintiffs").  Presently before the Court are Plaintiffs' and Defendants' cross-motions for summary judgment on Plaintiffs' FLSA and NYLL claims; and Plaintiffs' motion for certification of their NYLL class claims.[3]

For the reasons stated below, as to Plaintiffs' FLSA claims, the Court GRANTS in part and DENIES in part Plaintiffs' motion for summary judgment, and DENIES Defendants' motion.  The Court concludes that Plaintiffs are entitled to unpaid minimum and overtime wages under the FLSA, but that Plaintiffs have failed to demonstrate that they are entitled to compensation for any alleged late payment of wages.

---

[1] On June 5, 2009 this case was transferred from Judge Stephen C. Robinson to the undersigned.

[2] The FLSA requires potential plaintiffs in a collective action to affirmatively "opt-in" to join the suit.  29 U.S.C. § 216(b).  In a class action under Rule 23(b)(3), however, plaintiffs are members of the class until they affirmatively "opt-out" of the class proceeding.

[3] Plaintiffs bring their motion for class certification simultaneously with their motion for summary judgment.

As to Plaintiffs' NYLL claims, the Court GRANTS Plaintiffs' motion for class certification pursuant to Rule 23.  Plaintiffs and Defendants again cross-move for summary judgment.  As discussed below, the Court will consider the merits of Plaintiffs' NYLL class claims only after adequate notice has been sent to potential members of the NYLL class.  The Court, therefore, DENIES <u>without prejudice</u> Plaintiffs' and Defendants' cross-motions for summary judgment on Plaintiffs' NYLL claims.

**<u>BACKGROUND</u>**

I.   <u>Facts</u>

Unless otherwise noted, the following facts are undisputed, and are derived from the parties Local Rule 56.1 Statements, affidavits, and other submissions.

A.   <u>The Parties</u>

Defendant Jan Kvas, d/b/a Orion Carpentry, operated a construction business in Dutchess County, New York.  Kvas's business was incorporated as Orion Builders, Inc. in March 2004. (Pls. Rule 56.1 Stat. ¶¶ 1-2.)

Plaintiff Cuzco was employed by Defendants as a construction and carpentry laborer between December 30, 2002 and October 9, 2004, and between at least April 30, 2005 and June 30, 2005.[4]

_____

[4] Opt-in Plaintiff Figueroa alleges he worked for Defendants between approximately July 14, 2003 until July 31, 2003; opt-in

(Pls. Rule 56.1 Stat. ¶ 9.)   Defendants employed between 66 and 79 other construction and carpentry workers from September 2002 through the end of 2005 ("the relevant period").

B.   Payment of Wages

Defendants' workers were paid based on a single hourly rate, regardless of the number of hours they worked each week.   For example, Plaintiff Cuzco was paid $8.50 per hour between December 30, 2002 and April 27, 2003, which was later increased to a high of $12.00 per hour.   (Pls. Rule 56.1 Stat. ¶¶ 13-17.)   While employed by Defendants, Cuzco alleges he worked a total of at least 366 overtime hours, and on at least 209 days his spread of hours exceeded 10 hours.

C.   Tools of the Trade

Defendants' workers were required to obtain certain tools as a condition of employment, including a circular saw, a hammer, and a sawsill, at a cost of approximately $250.   (Pls. Rule 56.1 Stat. ¶¶ 21-22.)   Defendants' workers were not separately reimbursed by Defendants for the cost of these tools.

D.   Timing of Payment

Generally, Plaintiffs were paid bi-monthly.   (Pls. Rule 56.1 Stat. ¶ 27.)   Plaintiffs allege, however, that Defendants

---

Plaintiff Guiracocha alleges he worked for Defendants between November 1, 2004 and November 11, 2004.

structured the pay schedule so that Plaintiffs were not paid until they worked for Defendants at least 30 days.

    E.   <u>Plaintiffs' Allegations</u>

    Plaintiffs allege that Defendants' pay practices violated federal and state labor laws.  Specifically, Plaintiffs allege that Defendants:

(1) failed to pay overtime compensation (that is, wages equal to not less than one and a half times their regularly hourly rate) for hours worked in excess of 40 hours during the week;

(2) improperly accounted for the cost of tools they were required to purchase (causing their pay during their first workweek to drop below the federal and state minimum wage);[5]

(3) failed to pay wages in timely fashion (<u>i.e.</u>, within seven calendar days of the week they worked pursuant to NYLL); and

(4) failed to pay them spread of hours wages (an extra hour of pay at the state minimum wage for workdays exceeding 10 hours).[6]

II.  <u>Procedural History</u>

    On April 7, 2006, Plaintiff Cuzco filed his initial complaint against Defendants alleging violations of the FLSA and

---

    [5] Between September 2002 and December 2004, the federal and New York state minimum wage in effect was $5.15.  For the 2005 calendar year, the minimum wage in effect in New York was $6.00.

    [6] The first three allegations are brought under parallel or related provisions of the FLSA and NYLL; the fourth allegation is based solely on a requirement of the NYLL.

NYLL.  Cuzco brought his FLSA claims on behalf of himself and other similarly situated workers.

On July 25, 2006 Cuzco filed a Motion to Proceed as Representative Action under the FLSA, for Court-Authorized Notice, and for the Disclosure of the Names and Addresses of Potential Opt-in Plaintiffs ("representative action motion").  On November 20, 2006 Cuzco submitted a letter brief seeking leave to file an amended compliant that, among other things, added Rule 23 class claims for violations of NYLL.  On March 8, 2007 the Court granted Cuzco's representative action motion and leave to amend. Thus, on March 16, 2007, Cuzco filed his First Amended Complaint ("Am. Compl."), which included Rule 23 class claims.

On October 25, 2007, Plaintiffs and Defendants filed cross-motions for summary judgment on Plaintiffs' FLSA and NYLL claims, and Plaintiffs filed a motion for class-certification pursuant to Rule 23.

**STANDARD OF REVIEW**

I.   Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, affidavits, and disclosures that form the record establish that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment should be denied "if the evidence is

such that a reasonable jury could return a verdict" in favor of
the non-moving party.  NetJets Aviation, Inc. v. LHC Commc'ns,
LLC, 537 F.3d 168, 178-79 (2d Cir. 2008).  The Court must
construe the evidence in the light most favorable to the
non-moving party and must draw all reasonable inferences in the
non-moving party's favor.  In re "Agent Orange" Prod. Liab.
Litig., 517 F.3d 76, 87 (2d Cir. 2008).

In deciding a motion for summary judgment, the role of the
Court is not to ask whether "the evidence unmistakably favors one
side or the other but whether a fair-minded jury could return a
verdict for the plaintiff on the evidence presented."  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Because the
Court's role is limited in this respect, the Court may not make
factual findings, determine credibility of witnesses, or weigh
evidence.  See Jeffreys v. City of New York, 426 F.3d 549, 554
(2d Cir. 2005); Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614,
619 (2d Cir. 1996).  Evidence based on speculation or conjecture,
however, is insufficient to defeat summary judgment.  W. World
Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

II.  Class Certification

Plaintiffs moving for class certification pursuant to Rule
23 must establish that: (1) the class is so numerous that joinder
of all members is impracticable; (2) there are common issue of

law and fact; (3) the claims of the representative parties are typical of the class; and (4) the representative plaintiffs will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Plaintiffs moving for class certification under Rule 23(b)(3), as here, must also establish that: (1) common issues of law and fact predominate over individual claims, and (2) that a class action is superior to other available means of adjudicating the action.  Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370, 372 (S.D.N.Y. 2007).

## DISCUSSION

As set forth above, the Court first considers Plaintiffs' FLSA claims.

I.   FLSA Violations

The FLSA affords covered employees a right to, inter alia, a minimum wage and overtime pay.[7]  Plaintiffs argue that Defendants violated the FLSA by (1) failing to pay overtime compensation,

---

[7] In a stipulation, Defendants concede that "the Plaintiff" was the Defendants' "employee at various times relevant to this civil action and never an independent contractor."  (Stip. ¶ 1; Nov. 26 Werner Decl. Ex I.)  The Court notes that the stipulation itself appears to concern only Plaintiff Cuzco's working relationship with Defendants.  As explained below, the Court finds that Defendants' other workers were similarly situated to Cuzco for purposes of class certification, and Defendants, in any case, do not appear to challenge the FLSA's applicability to Opt-in Plaintiffs' claims.  Therefore, the Court does not separately consider the Opt-in Plaintiffs' employment status under the FLSA.

(2) improperly accounting for work-required tools, and (3) failing to pay its employees in a timely fashion.  The Court addresses each of these alleged violations in turn.

    A.   Overtime Compensation

        1.   Legal Standard

The FLSA requires employees to be compensated at a rate of not less than one and a half of their "regular rate" of pay for all hours worked in a week over 40 hours.  29 U.S.C. § 207(a)(1); Barrentine v. Arkansas Best Freight Systems, Inc., 450 U.S. 728, 739 n.15 (1981).[8]  The regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed," Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945), and is calculated by dividing the employee's weekly compensation by the number of hours for which that compensation is intended.  See, e.g., Moon v. Kwon, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002); see also 29 C.F.R. §§ 778.109; 778.113(a).  For employees compensated "solely on the basis of a single hourly rate," the regular rate is the hourly rate.  29 C.F.R. § 778.110; see Chao v. Casting, Acting and Security

---

    [8] New York's Labor Law provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in . . . the Fair Labor Standards Act of 1938, as amended." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

<u>Talent, Inc.</u>, 79 Fed. Appx. 327, 328 (9th Cir. 2003).

    2.  <u>Application</u>

    a.  <u>Plaintiff Cuzco</u>

There is no dispute that Cuzco was paid based on a single hourly rate (initially $8.50 per hour, and increased at various times to a high of $12.00 per hour).  There is also no dispute that Cuzco was paid the same hourly rate, regardless of the number of hours worked.[9]  Thus, Cuzco's regular rate of pay is his hourly rate, and he is entitled to one and half times this rate for all overtime hours.

Defendants make a variety of arguments in this case, but their principal one appears to be that they did not need to pay Cuzco "separate" overtime compensation, because Cuzco's hourly rate was intended to include a built-in overtime component.

Defendants point to a stipulation in this case, which states that Cuzco's $8.50 hourly rate was derived from an oral agreement to pay him $510 for a sample week of 60 hours.  (<u>See</u> Stip. ¶ 2; Nov. 26 Werner Decl. Ex I.)  Defendants then argue that Cuzco's regular "base rate" was really $6.84,[10] such that the $8.50 per

---

    [9]  (<u>See</u> Sept. 22, 2006 Kvas Decl. at ¶ 10, Werner Decl. Ex. G; Nov. 26, 2007 Vazquez Decl. at ¶ 6, Ex. A; May 25, 2007 Tr. at 3:12-19, Werner Decl. at ¶ 17, Ex. H.)

    [10]  At other times, Defendants use a different $6.52 amount to describe Cuzco's alleged "base rate."  (<u>See</u> Defs. Rule 56.1 Resp. ¶ 13.)

hour rate included a one and half times overtime premium (based on an average of 20 overtime hours in a week).  The $8.50 per hour rate also included, according to Defendants, at least six payments of $6.84 to account for any spread of hours wages, a credit for the cost of any work-related tools, and a weekly meal allowance.  In other words, Defendants contend that Cuzco's regular base rate was set high enough to ensure that any overtime or other FLSA or NYLL mandated compensation was included in his total weekly wages.  The Court rejects Defendants' argument.[11]

First, the regular rate is based on the actual mode of payment, and there is no evidence that Cuzco was ever paid at a rate of $6.84 per hour (or at any multiple thereof for overtime hours).[12]  29 C.F.R. § 778.108; <u>Bay Ridge Operating Co. v. Aaron</u>, 334 U.S. 446, 464 (1948).  A regular rate will not be recognized when it is set in a "wholly unrealistic and artificial manner as to negate the statutory purposes" of the FLSA.  <u>Walling v. Helmerich & Payne, Inc.</u>, 323 U.S. 37, 42 (1944); <u>see id.</u> ("[E]ven

---

[11] Defendants also argue that the fact that "labor law" posters, explaining an employee's rights to a minimum wage and overtime pay, were allegedly posted at Defendants' worksites demonstrates that their employees clearly understood their hourly rate as inclusive of any overtime premiums.  Defendants offer no evidence of any such understanding.

[12] There is no evidence, for example, to suggest that Defendants paid or would have paid Cuzco more than $8.50 in any workweek that exceeded the sample of 60 hours.

when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40.").[13]

Second, Defendants' reliance on the Second Circuit's decision in Adams v. Dep't of Juvenile Justice, 143 F.3d 61 (2d Cir. 1998), is misplaced.   Adams involved stay-at-home housekeepers who were compensated based on a fixed annual salary. The court, in attempting to convert that salary into an FLSA regular hourly rate, looked to the agreement of the parties as to whether the salary was intended to include overtime compensation. Id. at 66; see also Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) ("[Absent explicit agreement of the parties], courts do not deem weekly salaries to include . . . overtime premium[s][even] for workers regularly logging overtime . . . .").[14]   Here, Defendants' employees are not paid a fixed

---

[13] Defendants make much of the fact that at all times Cuzco's hourly rate ($8.50 per hour) exceeded the "average hourly take home rate" of an employee compensated at the FLSA minium wage.  This fact in no way absolves Defendants' of their failure to pay overtime compensation under the Act.  Helmerich & Payne, Inc., 323 U.S. at 42; see Barrentine, 450 U.S. at 741 n.18 ("[E]mployees are not to be deprived of the benefits of the Act simply because they are well paid . . . .") (internal quotations omitted).

[14] The "fixed salary" or "fluctuating workweek" method of calculating overtime compensation is well-summarized at 19 C.F.R. § 778.114.  This method is inapplicable as Plaintiffs are not paid a fixed salary.

weekly or annual salary, but are instead paid a single hourly rate.  Adams does not change the rule that the regular rate in such a circumstance is the hourly rate.

Thus, there is no issue of disputed fact concerning Defendants' failure to pay overtime compensation under the FLSA, and the Court grants summary judgment in favor of Plaintiff Cuzco.

### b.   Opt-in Plaintiffs: Figueroa and Guiracocha

Opt-in Plaintiffs Figueroa and Guiracocha also submitted declarations in this case, detailing inter alia the same failure to pay overtime compensation.  Defendants do not appear to contest either the number of hours they worked, or the hourly rates they were paid.[15]  Instead, Defendants contend that they paid a single hourly rate (albeit one Defendants have argued was intended to include any overtime compensation) to all such similarly situated workers.  Thus, for the same reasons stated above, the Court grants Plaintiffs' motion for summary judgment in favor of Opt-in Plaintiffs on their FLSA overtime claims.

### c.   Actual and Liquidated Damages

The FLSA entitles Plaintiffs to both (1) actual damages in

---

[15] The Court rejects Defendants' challenges to the authenticity of Opt-in Plaintiffs' declarations, which are based on nothing more than mere speculation. (Defs. Rule 56. 1 Resp ¶¶ 10, 18.)

13

the form of unpaid wages, and (2) in most cases, an equal amount in liquidated damages.  See 29 U.S.C. § 216(b).

An exception to the liquidated damages rule arises when the employer acted "in good faith" and "had reasonable grounds for believing" that he was not violating the FLSA.  Id. § 216.  Good faith requires "more than ignorance of the prevailing law . . . . It requires that an employer first take active steps to ascertain the dictates of the FLSA, and then move to comply with them." Reich v. Southern New England Telecoms. Corp., 121 F.3d 58, 71 (2d Cir. 1997); see also id. ("[T]he employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . . The burden . . . is a difficult one to meet, however, and double damages are the norm, single damages the exception.") (internal citations and quotations omitted).

Defendants have not met their burden.  There is no evidence to suggest that Defendants made any attempt to discern the requirements of the FLSA, or to comply with its mandates.  Thus, Plaintiffs are entitled to both actual and liquidated damages for Defendants' violations of the FLSA.

### (1)  Plaintiff Cuzco

Plaintiff Cuzco contends he worked at least 366 overtime hours from December 2002 through June 2005, and that Defendants

14

owe him $1909.44 in unpaid overtime wages.  (Vazquez Decl. ¶ 9,
15, Ex. B.)  Plaintiff Cuzco's overtime hours in 2003 and 2004
are reflected in both Defendants' time sheets and bank records,
and summarized by a chart created by Plaintiffs.[16]  (Id.)
However, because Defendants allegedly did not produce records for
2005, Cuzco's overtime hours for 2005 are based on Cuzco's
estimate that he worked on average 50 hours per week that year.

Where an employer fails to maintain adequate records of his
employees' compensable time as required by the FLSA, a plaintiff
employee must produce only "sufficient evidence to show the
amount and extent of that work as a matter of just and reasonable
inference."  Reich, 121 F.3d at 67 (quoting Anderson v. Mt.
Clemens Pottery Co., 328 U.S. 680, 687 (1946)).  A plaintiff may
rely on his own recollection to meet this burden.  Yang v. ACBL
Corp., 427 F. Supp. 2d 335, 335-37 (S.D.N.Y. 2005).  At this
point, the burden shifts to the employer "to come forward with
evidence of the precise amount of work performed or with evidence
to negative the reasonableness of the inference to be drawn from

---

[16] Defendants do not specifically challenge the accuracy of
Plaintiffs' calculations.  Defendants' response that the paralegal
who prepared this summary on behalf of Plaintiffs is not a
"forensic accountant" is irrelevant.  (Defs. Rule 56.1 Resp. ¶ 8.)
Therefore, the Court may determine appropriate  overtime and other
FLSA compensation on summary judgment.  See Dingwall v. Friedman
Fisher Assoc., 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998).

the employee's evidence." Mt. Clemens, 328 U.S. at 687-88.
Should the employer fail to produce such evidence, the court may
award damages, even though the result is only approximate.
Reich, 121 F.3d at 67.

Here, Defendants challenge Cuzco's estimate, claiming he
worked only an average of 33.80 hours per week that year,
including a total of 34 overtime hours.  (Defs. Rule 56.1 Resp.
¶¶ 12, 54.)  Defendants' submissions create an issue of fact as
to the number of overtime hours Cuzco worked in 2005.  Because
Plaintiffs' calculations of Cuzco's unpaid overtime wages
incorporates this 2005 pay period, the Court cannot award damages
for Cuzco's overtime claim on summary judgment.

### (2)  Figueroa

Opt-in Plaintiff Figueora's regular rate of pay was $14 per
hour.  Figueora contends, and Defendants' records confirm, he
worked 49 hours during one workweek.  (Figuerora Decl. ¶ 5;
Vazquez Decl. ¶ 12, 17-18.)  Therefore, Defendants owe Figueroa 9
hours of overtime pay, and actual damages of $63.00, equal to
total damages of $126.00.

### (3)  Guiracocha

Opt-in Plaintiff Guiracocha's regular rate of pay was $10
per hour.  Guiracocha contends, and Defendants' records confirm,
he worked 41.5 hours during one workweek.  (Guiracocha Decl. ¶ 5;

Vazquez Decl. ¶ 11, 19-20.)  Therefore, Defendants owe Guiracocha
1.5 hours of overtime pay, and actual damages of $7.50 and total
damages of $15.00.

    B.   Improper Accounting for Cost of Tools

    Plaintiffs claim that they were paid less than the minimum
wage during certain workweeks, because Defendants failed to
properly reimburse them for the cost of tools they were required
to purchase.

    The FLSA regulations provide that:

> [I]f it is a requirement of the employer that the
> employee must provide tools of the trade which will be
> used in or are specifically required for the
> performance of the employer's particular work, there
> would be a violation of the Act in any workweek when
> the cost of such tools purchased by the employee cuts
> into the minimum or overtime wages required to be paid
> him under the Act.

29 C.F.R. § 531.35; see 29 C.F.R. §§ 531.32, 531.3(d)(2).[17]

    Defendants argue, as noted above, that the Plaintiffs'

---

[17] The Court notes that the FLSA regulations do not appear to
explicitly cover items required to be purchased before the first
workweek.  But the Court agrees with the Eleventh Circuit Court of
Appeals that there is "simply no legal difference between an
employer requiring a worker to have tools before the first day of
work, requiring the tools to be purchased during the first
workweek, or deducting the cost of the tools from the first week of
wages." Arriaga v. Fla. Pac. Farms, LLC, 305 F.3d 1228, 1237 (11th
Cir. 2002) (internal citations omitted).  Therefore, Defendants'
workers must here be "reimbursed during the first workweek for
[such] pre-employment expenses . . . to the point that wages are at
least equivalent to the minimum wage." Id.

hourly take home wage also included a credit for the cost of any required tools.  The Court has already rejected Defendants' argument that the take home wage consisted of anything but a regular hourly wage, and Defendants raise no triable issue of fact as to either the requirement to purchase the tools or their cost to Plaintiffs.  Therefore, Plaintiffs are entitled to the difference between the minimum wage and their actual "net" wage during those workweeks.

Specifically, the Court concludes (1) Plaintiff Cuzco is entitled to reimbursement of $73.37 for the week of 12/30/02 - 1/05/03, and $41.12 for the cost of the $100 sawsall purchased during the week of 2/24/03-3/2/03, for a total of $228.98 in actual and liquidated damages; and (2) Plaintiff Guiracocha is entitled to $108.85 for the week of 8/21/03 - 8/27/03, for a total of $217.70 in actual and liquidated damages.  (Pls. Rule 56.1 Stat. ¶¶ 20-26.)

C.   <u>Late Payments</u>

Plaintiffs claim that Defendants violated the FLSA's prompt payment requirement.  Plaintiffs allege that Defendants' failed to pay them "within seven calendar days" of the end of the workweek, as is required for manual laborers under NYLL.  § 191.

"Although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to

include a prompt payment requirement." <u>Rogers v. City of Troy</u>,
148 F.3d 52, 57 (2d Cir. 1998).  The authorities cited by
Plaintiffs here concern a change in the employee's pay schedule
that results in a payment later than his or her regular pay date.
Plaintiffs, however, cite no authority for the proposition that
an employer's failure to structure his pay schedule to comply
with a state-mandated pay-period also constitutes a violation of
the FLSA's prompt payment requirement.[18]

The Court, therefore, denies Plaintiffs' motion for summary
judgment for late payment of wages under the FLSA.

II.  <u>Class Certification</u>

Plaintiffs seek class certification on their NYLL claims
pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).  For the reasons
stated below, the Court grants Plaintiffs' request to certify a
Rule 23(b)(3) class for Defendants' alleged NYLL violations.[19]

A.  <u>Rule 23(a) Requirments</u>

_____

[18] Plaintiff Cuzco also alleges he was paid only a year later
for approximately 125 hours he worked in 2005.  (Pls. Rule 56.1
Stat. ¶ 54.)  Defendants respond that Cuzco disappeared from the
job site and Defendant Kvas made every effort to contact him and
make payment.  (Defs. Rule 56.1 Resp. ¶ 54.)  The Court, therefore,
finds there is a disputed issue of fact that precludes summary
judgment with respect to this alleged late payment.

[19] Courts in this district have often simultaneously certified
both collective opt-in actions under the FLSA, and a Rule 23 opt-
out class actions for alleged state law violations.  <u>Igelesias-
Mendoza</u>, 239 F.R.D. at 373-75 (collecting cases).  Other courts
have reached a different result.  <u>See</u> <u>id.</u>

1.   <u>Numerosity</u>

Rule 23(a)(1) requires a potential class to be "so numerous that joinder of all members is impracticable."  In making this determination, courts should consider, <u>inter alia</u>, the "judicial economy arising from the avoidance of a multiplicity of actions," and "the ability of claimants to institute individual suits." <u>Robidoux v. Celani</u>, 987 F.2d 931, 936 (2d Cir. 1993).  A presumption that joinder is impracticable arises where the prospective class consists of 40 members or more.  <u>Id.</u>; <u>Igelesias-Mendoza</u>, 239 F.R.D. at 370.

Here, Plaintiffs' review of Defendants' records reveals that Defendants employed a total of 80 individual workers during the years 2003, 2004, and 2005 (Vazquez Decl. ¶¶ 3-4), and Defendants have conceded that "67 individuals worked for the Defendants" during this period (Rothstein Decl. ¶ 3, Werner Decl. ¶ 7, Ex. 3).  Based on the number of potential plaintiffs, considerations of judicial economy arising from a single suit, and the low probability of any other individual suits, the Court finds that Plaintiffs satisfy Rule 23(a)'s numerosity requirement.

2.   <u>Commonality and Typicality</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical" of

the class.  As a practical matter, the two requirements merge in
the Second Circuit's inquiry.  <u>Carifad v. Metro-North Commuter
R.R.,</u> 191 F.3d 283, 291 (2d Cir. 1999); <u>see also</u> <u>Iglesisa-
Mendoza</u>, 239 F.R.D. at 370.  The commonality and typicality
requirements are satisfied "when each class member's claim arises
from the same course of events and each class member makes
similar legal arguments to prove defendant's liability."
<u>Robidoux</u>, 987 F.2d at 936-37.

The amended complaint raises the same claim on behalf of the
proposed class members:  that Defendants' failed to pay them (1)
overtime compensation, (2) the minimum wage in their first
workweeks, (3) spread of hours wages, and (4) wages in a timely
fashion.[20]  The proposed class members would thus rely on the
same allegedly wrongful conduct, and rely on the same legal
arguments in any suit against Defendants.  "[D]ifferences among

---

[20] The record reveals that Plaintiffs' workplace requirements
and pay practices were common to the proposed class.  For example,
Opt-in Plaintiffs make in relevant part identical allegations to
those made by the named Plaintiff Cuzco (Figueroa Decl. at ¶¶ 4-10;
Guiracocha Decl. at ¶¶ 4-11); Defendant Kvas admitted that any
failure to pay separate overtime compensation was the product of
common pay practices (10/2006 Kvas Depo. at 116:11-119:15); and in
a supplemental declaration submitted by Defendants, Defendants'
foreman, Zaza Khvedelidze, stated that "the relationship between
Kvas, myself, and other framing carpenters that were contracted to
work for Mr. Kvas, the tools used and working conditions were
generally the same . . . .  [A]ll other workers who worked for Mr.
Kvas worked under almost identical working conditions" (Khvedelidze
Decl. at ¶¶ 8, 18).

the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled," not the amenability of the plaintiff's claims to Rule 23 certification.  Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

Thus, the Court finds that Plaintiffs have satisfied Rule 23's commonality and typicality requirements.

### 3.   Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to demonstrate that the proposed action will fairly and adequately protect the interests of the class.  To satisfy this requirement, plaintiffs must show (1) that there is an absence of conflict and antagonistic interests between them and the class members, and (2) that plaintiffs' counsel is qualified to and capable of conducting the litigation.  Iglesias-Mendoza, 239 F.R.D. at 373.

Plaintiffs satisfy this requirement.  The Court is aware of no conflict or other antagonistic interest that would bar Plaintiffs' representation of the class.[21]  There is also no

---

[21] The disputed issues of fact, noted above, as to the number of hours Plaintiff Cuzco worked in 2005 (and Defendants' alleged failure to pay him for a year) concern individual damages, not general liability.  These disputes do not, for example, concern the very subject matter of the litigation, nor do they threaten to become the focus of the suit (considerations, courts have found,

dispute that Plaintiffs' counsel, the Workers' Rights Law Center
of New York ("WLRC"), is both qualified and capable of
representing the proposed class.  WLRC attorneys have
considerable experience in employment law and class action
litigation, and the firm was recently appointed class counsel in
another dual FLSA and NYLL action.  See Iglesias-Mendoza, 239
F.R.D. at 375.

     B.   Rule 23(b)(3) Requirements

     Plaintiffs must also satisfy the requirements of Rule
23(b)(3), which requires (1) that common issues of law and fact
predominate over individual claims, and (2) that a class action
is superior to other means of adjudicating the action.  As set
forth below, Plaintiffs satisfy these requirements.

     1.  Predominance

    The predominance requirement is a stricter version of the
Rule 23(a) commonality requirement.  Ansoumana, 201 F.R.D. at 89;
see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).
"[T]o meet the predominance requirement, a plaintiff must
establish that the issues that are subject to generalized proof,
and thus applicable to the class as a whole, . . . predominate

---

that might defeat representative status).  See Baffa v. Donaldson,
Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000);
Martens v. Smith Barney, 181 F.R.D. 243, 259 (S.D.N.Y. 1998).

over those issues that are subject only to individualized proof."
In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 126
(2d Cir. 2001) (internal quotation marks omitted).

Here, common questions of liability clearly predominate over
any individual inquiries; namely, whether Defendants' pay
practices violated the NYLL overtime, minimum wage, and late
payment provisions. See Iglesias-Menodoza, 239 F.R.D. at 373
("These are about the most perfect questions for class
treatment.").  The existence of some factual variations in hours
worked or hourly rates goes to the measure of damages, if any,
and does make the action ill-disposed to class treatment.  See
id.; Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157-
58 (S.D.N.Y. 2002); Ansoumana, 201 F.R.D. at 86.

2. Superiority

In determining whether the class form represents a superior
mode of adjudication, Rule 23(b)(3) instructs courts to consider:
(1) "the class members' interests in individually controlling the
prosecution or defense of separate actions"; (2) "the extent and
nature of any litigation . . . already begun by members of the
class"; (3) "the desirability or undesirability of concentrating
the litigation of the claims in the particular forum"; and (4)
"the likely difficulties in managing a class action."

Plaintiffs also satisfy the superiority requirement.  The

proposed class members are almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system.  It is, therefore, "extremely unlikely that they would pursue separate actions." Iglesias-Mendoza, 239 F.R.D. at 373; see also McBean v. City of New York, 228 F.R.D. 487, 503 (S.D.N.Y. 2005) ("[A]ssumed socioeconomic status of the proposed class members . . . argues in favor of class action treatment to protect the rights of class members unable to litigate their individual claims.").  The Court, moreover, sees no particular difficulty in the management of the state law class.  Liability issues will, in many cases, mirror the Court's analysis of Plaintiffs' FLSA representative claims, supra, and the calculation of damages will be based largely on records Defendants were required to keep under federal and state labor laws.  See 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6.

Thus, for the reasons stated above, the requirements of Rule 23(b)(3) have been satisfied.  The Court hereby certifies the following class:  "All construction or carpentry workers who were employed by Defendants at any time from September 1, 2002 through December 31, 2005."[22]

---

[22] This class definition is, with slight variations, the same class pre-certified as an FLSA collection action.  Plaintiffs, in

C.    Request to Appoint Class Counsel

Plaintiffs ask the Court to appoint the WLRC as class counsel pursuant to Rule 23(g).  The Court must consider:  "(1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class."  The court may also consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  See Noble v. 93 University Place Corp., 224 F.R.D. 330, 339-340 (S.D.N.Y. 2004).

As explained above, there is no question that the WRLC is qualified to and fully capable of litigating this action.  WRLC has, moreover, already done significant work in pursuing FLSA and individual state law claims on behalf of the named Plaintiffs and the state law class.  The Court, therefore, appoints WRLC as class counsel.

D.    Adequacy of Proposed Class Notice

---

their moving papers, attempted to broaden the class definition to include "all individuals" who worked for Defendants from September 2002 "through the present."  Plaintiffs provide no reason why the Court should expand the scope of the class, and the evidence submitted thus far does not support such an extension.

Plaintiffs ask this Court to approve its proposed class notice, which Plaintiffs state has been attached to its memorandum as Ex. A.  The Court, however, is not in possession of Plaintiffs' proposed notice.  Therefore, as set forth below, the Court directs Plaintiffs to submit to the Court a proposed notice for its approval.

III.  New York Labor Law Violations

Plaintiffs and Defendants' also cross-move for summary judgment on Plaintiffs' NYLL claims (now certified as class claims).  A court's decision on the merits, however, should ordinarily not occur before or simultaneous with a decision on class certification.  Philip Morris Inc. v. National Asbestos Workers Medical Fund (In re Philip Morris Inc.), 214 F.3d 132, 135 (2d Cir. 2000); see Mendez v. The Radec Corp., No. 03-CV-6342L, 2009 WL 2584831, at *4 (W.D.N.Y. Aug. 20, 2009) (collecting cases); see also Bertrand v. Maram, 495 F.3d 452, 455 (7th Cir. 2007) ("Class-action status must be [decided] . . . early to clarify who will be bound by the decision.").  Accordingly, the Court will defer a decision on the merits on Plaintiffs' NYLL class claims until adequate notice has been sent to the potential class members.[23]  Thus, the Court  denies

_____

[23]  The Court recognizes that the Court's decision herein on Plaintiffs' FLSA claims will inform, and in many cases govern, any

without prejudice the parties' cross motions for summary judgment
on the NYLL claims, and grants the parties' leave to re-file
these motions according to a schedule, as set forth below, to be
approved by the Court.

**CONCLUSION**

For the reasons stated above, the Court (1) GRANTS in part
and and DENIES in part Plaintiffs' motion for summary judgment
(D.E. 61);[24] (2) DENIES Defendants' motion for summary judgment

---

decision on the NYLL claims.  However, because Defendants in this
case did not raise any objection to Plaintiffs' simultaneous
motions, and in fact themselves cross-moved for summary judgment on
both the FLSA and NYLL claims, Defendants have arguably waived any
objection to a Court's simultaneous decision on the merits.
Mendez, 2009 WL 2584831 at * 4-5 (collecting cases); see Adames v.
Mitsubishi Bank, Ltd., 133 F.R.D. 82, 87 (E.D.N.Y. 1989) ("There is
nothing in Rule 23 to preclude the Court from examining the merits
of plaintiffs' claims on a proper . . . Rule 56 motion simply
because such a motion is returnable contemporaneously with a class
motion."); Vega v. Credit Buerau Enterprises, No. 02-cv-1550, 2005
WL 711657, at *10 (E.D.N.Y. 2005) (granting simultaneous motions
for class certification and summary judgment).

[24] Thus far, the Court has determined that Plaintiff Cuzco is
entitled to $228.98 in actual and liquidated damages on his FLSA
minimum wage claim; Opt-in Plaintiff Figueroa is entitled to
$126.00 in actual and liquidated damages on his FLSA overtime
claim; and Opt-in Plaintiff Guiracocha is entitled to $232.70 in
actual and liquidated damages on his FLSA overtime and minimum wage
claims.

approved by the Court.

**CONCLUSION**

For the reasons stated above, the Court (1) GRANTS in part

and DENIES in part Plaintiffs' motion for summary judgment

(D.E. 61);[24] (2) DENIES Defendants' motion for summary judgment

(D.E. 50; 70); and (3) GRANTS Plaintiffs' motion for class

certification of their NYLL claims (D.E. 55).

The parties are directed to submit a joint letter to the

Court not later than Friday, October 9, 2009, setting forth a

proposed schedule to send class notices, and to submit any

renewed motions for summary judgment on the NYLL claims.  The

joint letter should also include Plaintiffs' proposed class

notice, and any objections thereto.

SO ORDERED.

Dated:    New York, New York
          September 30, 2009

_(Kimba M. Wood)_

Kimba M. Wood
United States District Judge

---

[24] Thus far, the Court has determined that Plaintiff Cuzco is
entitled to $228.98 in actual and liquidated damages on his FLSA
minimum wage claim; Opt-in Plaintiff Figueroa is entitled to
$126.00 in actual and liquidated damages on his FLSA overtime
claim; and Opt-in Plaintiff Guiracocha is entitled to $232.70 in
actual and liquidated damages on his FLSA overtime and minimum wage
claims.

28