Nathaniel K. Charny (NC 5664)
Charny & Associates
9 West Market Street, Suite B
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnyandassociates.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAUL MARCELO CUZCO, | Case No. 06-CV-2789 (KMH) (THK) |
| Plaintiff, | AFFIRMATION OF NATHANIEL K. CHARNY IN SUPPORT OF PLAINTIFFS' CALCULATION OF DAMAGES |
| -against- | |
| ORION BUILDERS, INC. et al., | |
| Defendants. | |

Nathaniel K. Charny, an attorney admitted to practice before this Court, makes and submits this affirmation and its exhibits in support of Plaintiff Cuzco et al.'s calculation of damages in the above-captioned matter.

## INTRODUCTION

1. The Court has previously determined that Defendant Jan Kvas, individually and d/b/a Orion Carpentry, and Defendant Orion Builders, Inc. (collectively the Defendants) violated New York Labor Law (herein NYLL) by failing to pay Plaintiff Cusco and the class of similarly situated workers:

> (i) overtime wages;
> 
> (ii) minimum wage during the first workweek because of the Defendants' requirement that each employee purchase his own tools;

1

   (iii) wages in a timely fashion; and

   (iv) "spread of hours" wages (an extra hour of pay at the state minimum wage for workdays exceeding ten hours).

See May 26, 2010 Opinion and Order (ECF Docket No. 108).

  2. Presently before the Court is the task of determining the amount of damages due to the Plaintiff Class for each of these violations.  See id. at p. 9 & n.10.

  3. In addition, the Court must determine the number of hours Plaintiff Cusco worked in 2005 in order to finalize the calculation of damages due to Plaintiff Cusco under the Fair Labor Standards Act (herein FLSA).  See id.

### Plaintiffs' Federal Claims

  4. By Decision and Order dated March 12, 2007, Judge Robinson certified this matter as a Collective Action under FLSA, which requires potential FLSA plaintiffs to affirmatively "opt in" to join the suit.  (ECF Docket No. 35; see 29 U.S.C. §216(b).)  Two additional employees, Claudia Figueroa and Bolivar Guiracocha, consented to opt-in (collectively referred to as the FLSA Opt-in Plaintiffs).

  5. By Decision and Order dated September 30, 2009 (ECF Docket No. 101), the Court granted in part and denied in part Plaintiffs' motion for summary judgment on the FLSA Opt-In Plaintiffs' claims.  The Court found that Defendants were liable to the Opt-In Plaintiffs for:  (i) failure to pay overtime wages; (ii) liquidated damages; and (iii) improper accounting for cost of tools.  Id. at pp. 12-14.[1]

  6. In its September 30, 2009 Decision and Order, the Court calculated all of the damages due to the FLSA Opt-In Plaintiffs, with the exception of Plaintiff Cusco for

---

[1] The Court denied Plaintiffs' motion insofar as it sought damages for late payment of wages under FLSA. Id. at pp. 18-19.

2

whom the Court found there remained an issue of fact as to the number of hours worked by Plaintiff Cusco in 2005.  Id. at pp. 16-17 & 28 n.24.

7. During the course of discovery in this matter, Defendants produced a "summary" worksheet of Plaintiff Cusco's time working, including his time worked in 2005.  A true and correct copy of this document is submitted as Exhibit 1 and the Court's attention is respectfully directed to page 7 of this document.

8. As set out in Exhibit 1, Defendants contend that Plaintiff Cusco worked a total of 340 hours in 2005 -- a contention which Plaintiff accepts and, in turn, respectfully submits should form the basis of the Court's factual findings on Plaintiff Cusco's hours in 2005.

## Plaintiffs' NYLL Claims

9. In its September 30, 2009 Decision and Order (ECF Docket No. 101), the Court granted Plaintiffs' motion for class certification and certified a NYLL Class comprised of:  "All construction or carpentry workers who were employed by Defendants at any time from September 1, 2002 through December 31, 2005."

10. As compared to FLSA's collective action provision which require plaintiffs to "opt-in," the NYLL Class Certification required that plaintiffs be notified of the pending class action and giving them the option to "opt-out" of the suit.  See F.R.C.P. 23(b)(3).  After the requisite notice and notice period, there were no opt-outs to the class and, as a result, all of the construction or carpentry workers employed by the Defendants from September 1, 2002 through December 31, 2005, are entitled to damages under NYLL.

11. By Decision and Order dated May 26, 2010, the Court established that the Defendants are liable to all members of the Plaintiff Class for violating the NYLL, including: (i) failure to pay overtime for hours worked over forty (40) hours in a week; (ii) failure to pay the Plaintiffs weekly, as required by NYLL; (iii) failure to pay the Plaintiffs an extra hour at minimum wage for each day where the Plaintiffs worked ten (10) hours or more ("spread of hours"); and (iv) failure to pay Plaintiffs the minimum wage during their first week of work when they were required to purchase their own tools.

12. During the course of discovery in this matter two categories of documents were produced that allow for the individualized calculation of each of these categories of damages, including: (i) time sheets produced by the Defendants for each of the Plaintiffs; and (ii) checks drawn on the Defendants' bank accounts showing amounts paid to each of the workers, produced by way of third-party subpoenas.

13. The time sheets provide the following information:

- First day of the work week;
- Hours worked each day and total per week; and
- The hourly rate paid.

14. The checks provide the following information:

- Pay period for each check; and
- Amount paid for the time period.

15. Undersigned counsel managed and oversaw the work of two paralegals that entered this data into spreadsheets for each of the Plaintiff Class members. Each

spreadsheet for each of the Plaintiffs is submitted as a separate exhibit, followed by the backup documents including the time sheets and checks.

16. Attached as Exhibit 2 to this affirmation is a summary listing of each of the members of the Plaintiff Class and the total damages due to each Plaintiff Class member. This document also lists the exhibit which contains the spreadsheet calculation for each Plaintiff Class member.

17. The spreadsheets calculate each component of damages as follows:

Overtime Due: In the column marked "Total Due Under NYLL" the first forty hours worked in that week are multiplied by the hourly rate and every hour after 40 is multiplied by the hourly rate times 1.5. (The excel formula used is: =IF(C2>40,((40*D2)+(C2-40)*D2*1.5),D2*C2).) The actual amount paid (the column titled "Check Amount") is then subtracted from this total amount due under NYLL, resulting in the "NYLL Due" column.[2]

The total of all "NYLL Due" is set out in the "Totals" column under "NYLL Due."

Spread of Hours: The paralegals hand-counted the number of days listed on the time sheets that were ten (10) hours or more and listed them under the years 2003, 2004 and 2005. For each such day in 2003 and 2004, that number was multiplied by the then-applicable minimum wage of $5.15. For each such day in 2005, that number was multiplied by the then-applicable minimum wage of $6.00.

The total of all "SOH Due" is set out in the "Totals" column under "SOH Due."

---

[2] In those instances where the spreadsheet has an empty cell or cells below a number in the "check amount" column or "NYLL Due" column, it means that the calculation for that time period was done based on a two or three week period that includes those empty cells immediately below the cell with represented data.

5

Tools Accounting: As the Court found, each Plaintiff was required to purchase his own tools costing $250 for the first week of employment. ECF Docket No. 101, at p. 4. This unreimbursed purchase often resulted in the Plaintiff's first week of wages being below minimum wage.

In the spreadsheet, the "Hourly Rate Minus Tools" column represents the Total Due Under NYLL minus the $250 spent on tools which is then divided by the number of hours worked, resulting in a number that is the "Hourly Rate Minus Tools." (The Excel formula used is: (G2-250)/C2.) The difference between this number and the actual minimum wage for the year of the Plaintiff's first week of work is then multiplied by the number of hours actually worked set out in the column marked "Amt. Owed." (The Excel formula used is: (5.15-Q2)*C2 for years 2003 and 2004 and (6-Q2)*C2 for the year 2005.)

The total due for the tools accounting calculation is set out in the "Totals" column under "MW Due."

Late Payment of Wages: The paralegals reviewed the dates of each wage payment check and compared it against the pay period for which it represented and in every case, the payment was always at least two weeks late -- oftentimes being three to four weeks late. As such, Plaintiff Class members are each entitled to twenty-five percent (25%) damages for late payment of all monies due as wages. (See NYLL § 198.)[3]

---

[3] Although it is arguable that the plaintiff class members are entitled to 25% of the late wages for each week that the wages are late, Plaintiffs are not seeking such damages and instead, seeking only a flat 25% for all wages due.

This calculation is done on the spreadsheet by combining the Total Due Uner NYLL, SOH DUE and MW DUE numbers and multiplying by .25, resulting in a late payment of wages damages number set out in the Totals column as "Late Pay."

Assumptions Made

18. While the time sheets and the checks provide enough information to calculate nearly all of the damages with certainty, there were some instances where information was missing and, as a result, certain assumptions had to be made.

19. Although not required by cases interpreting the NYLL, the assumptions listed below are not only reasonable on their face, but were all were created to ensure that the Defendants received the greatest benefit-of-the-doubt.

20. The assumptions include:

(i) If there was no timesheet for a particular pay period, then it was assumed there were no days worked in excess of ten (10) hours.[4]

(ii) If there was a check for a particular time period but no time sheet, the amount of the check was divided by the rate of pay to determine the number of hours worked. In some instances, the checks would cover a one week, two week or three week period, and the number of hours were evenly spread over those number of weeks. This assumption is marked in the spreadsheet in red and appears in the "hours worked" column.

(iii) If there was a time sheet for a particular time period, but no check, it was assumed that the Plaintiff was paid for the number of hours worked in straight

---

[4] This is a particularly generous assumption, as it is apparent from the dollar figure on many of these checks that these periods included extended hours of work.

7

time. This assumption is also marked in the spreadsheet in red and would appear in the "check amount" column.

   (iv) In a few instances there were checks that did not include a pay period on them. In this case they were listed in chronological order and placed into the spreadsheet in a manner that fit logically into the pay periods set out in the time sheets. These assumptions are marked in blue and appear in the "check amount" column.

## Conclusion

21. Each spreadsheet includes a total due set out in the "Totals" column under "Total Due." This number is reached by adding together NYLL DUE, SOH DUE, MW DUE and LATE PAY.

22. Plaintiffs also seek attorneys fees and costs, and will await the Court's instruction as to the appropriate time and manner to make such a submission.

The foregoing is true and correct to the best of my knowledge and ability.


Dated: Rhinebeck, New York
   August 19, 2010

              Respectfully submitted:


              /s/ Nathaniel K. Charny
              Nathaniel K. Charny (NC 5664)